### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### BECKLEY DIVISION

JACK E. MEADOWS,

        Plaintiff,

v.                                                 CIVIL ACTION NO. 5:08-cv-01129

MICHAEL J. ASTRUE,
Commissioner of Social Security,

        Defendant.

### MEMORANDUM OPINION AND ORDER

This is an action seeking review of the final decision of the Commissioner of Social Security ("Defendant") denying Plaintiff's application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401- 433. By Standing Order entered on September 29, 2008 (Document No. 3), this action was referred to United States Magistrate Judge R. Clarke VanDervort for submission of proposed findings of fact and a recommendation for disposition, pursuant to 28 U.S.C. § 636.[1] On August 26, 2011, Magistrate Judge VanDervort submitted his proposed findings and recommended that the Court (1) deny Plaintiff's Brief in Support of Judgment on the Pleadings ("Pl.'s Mot.") (Document No. 23), (2) grant Defendant's Brief in Support of Judgment on the Pleadings ("Def.'s Mot.") (Document No. 21), (3) affirm the final decision of the Commissioner, that Plaintiff is not disabled within the meaning of the Act because he has the

---

[1] After a brief stay in this case, the matter was referred to the assigned Magistrate Judge again on June 15, 2010. (Order (Document No. 26.))

residual functional capacity to perform medium work with few limitations and is therefore capable of performing past relevant work as an electrician, and (4) dismiss this matter from the Court's docket. (Proposed Findings and Recommendation ("PF&R") (Document No. 28) at 28.)

This matter is currently before the Court on Plaintiff's objections to the Magistrate Judge's PF&R filed September 1, 2011 . (Plaintiff's Objections and Exceptions ("Pl.'s Obj.") (Document No. 29). Upon consideration of the parties' cross-motions for judgment on the pleadings, the Magistrate Judge's PF&R, Plaintiff's Objections and the entire record in this case, the Court overrules Plaintiff's objection, adopts the PF&R, and affirms Defendant's final decision.

## I. BACKGROUND AND PROCEDURAL HISTORY

On February 10, 2004, Plaintiff, Jack E. Meadows, filed an application for DIB, in which he alleged that he was unable to work due to a disabling condition which began on March 10, 2003. (AR at 81.)[2] In March of 2003, Plaintiff was involved in a car accident in which he was rear-ended by another vehicle. As a result of the accident, he lists the following illnesses, injuries or conditions that limit his ability to work: pulled back muscles, whiplash, degenerative disc disease and constant pain in his lower back, hips and legs.[3] (Pl.'s Mot. at 2; AR at 22, 81-83, 106.) Plaintiff's application was denied initially and upon reconsideration. (AR at 48-50, 56-58.) He requested a hearing before

---

[2] "(AR at ___)" refers to the administrative record which was filed by the Defendant on January 6, 2009. (Document No. 10.)

[3] Plaintiff provided the following explanation regarding how his illnesses or conditions limited his ability to work:

> Cannot stand on concrete or solid ground, trouble bending, walking, sitting in solid chairs, constant pain, cannot lift heavy objects.

(AR at 106.)

an Administrative Law Judge ("ALJ") and on July 12, 2005, that hearing was held before the Honorable Valerie A. Bawolek. (AR at 59, 356-93.) A supplemental hearing was held on March 7, 2006. (AR at 394-413.) On June 29, 2006, the ALJ issued her decision finding that Plaintiff was not disabled under the Social Security Act. (AR at 22-35.) The relevant findings and conclusions supporting that decision include the following:

- Plaintiff met the insured status requirements of the Social Security Act through December 31, 2008, and had not engaged in substantial gainful activity at any time since the alleged onset date. (AR at 24, Finding No. 1-2.)

- Plaintiff suffered from the severe impairment of lumbar strain (AR at 24, Finding No. 3.) The ALJ considered Plaintiff's medical records, x-rays, MRI, EMG and nerve condition study results. The ALJ also discussed the findings of: a Functional Capacity Evaluation performed by Jukey Dotson, physical therapist, on July 21, 2004, which found Plaintiff capable of tolerating employment in a medium physical demand classification occupation with the restriction that he limit his below knee level postures and lifting below knee level; a consultative physical examination performed by Dr. Serafino S. Maducdoc, Jr., on January 23, 2005, revealing chronic lumbosacral strain and degenerative arthritis; a consultative physical examination performed by Dr. Susan L. Garner on October 11, 2005, which included the impression that Plaintiff had a chronic lumbar pain/strain. (AR at 25-26.)

- The medical record evidence supported the conclusion that Plaintiff had nonsevere impairments related to foot pain, psoriasis, and neurodermatitis. Likewise, the record indicated that there were no severe impairments related to Plaintiff's headaches, occipital soreness, thumb cramping, shortness of breath, or pain in his finger, right elbow and chest. Relevant to Plaintiff's objections, the ALJ found that Plaintiff did not have a severe mental impairment. (AR at 26-28.)

- Plaintiff did not have an impairment or combination of impairments that met or equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.(AR at 29, Finding No. 4.)

- Plaintiff had the residual functional capacity to: lift and/or carry 50 pounds occasionally and 25 pounds frequently and stand, walk and/or sit for about six hours during an eight-hour work day. (AR at 29, Finding No. 5.) The ALJ found that Plaintiff's "medically determinable impairment could reasonably be expected to produce [his] alleged symptoms, but [his] statements concerning the intensity, duration and limiting effects of these symptoms [we]re not entirely credible." (AR at 30.)

- There were inconsistencies in the record which included written documentation reflecting a greater level of activity than that detailed in Plaintiff's testimony. (AR at 29.) The ALJ noted that Plaintiff's activities of daily living (*e.g.*, cooking, shopping, running errands, hunting, fishing, visiting family and friends, and washing dishes) were not consistent with the alleged severity of pain and other symptoms. (*Id.*) She also noted other inconsistencies in the record where Plaintiff alleged he had decreased grip strength, but his functional capacity evaluation of July 12, 2004, revealed a stronger than average grip. (AR at 30.) Additionally, Plaintiff alleged that he had not worked since March 10, 2003, yet he was observed with muddy boots, grease, oil and grime on his hands and clothes as if he had been working. (*Id.*) Also, on June 6, 2005, he reported that "he had been working a good bit at a friend's place of employment." (*Id.*) Further, the ALJ observed that Plaintiff's treating physician, Dr. Matthew Arvon, reported that he did not have any findings suggestive of total complete disability from a medical standpoint other than his observations. The ALJ found this conclusion consistent with the objective evidence of record, but inconsistent with Plaintiff's allegations of symptoms. (*Id.*)

- The objective findings and conservative treatment did not provide a basis for the pain and diminished capacity for physical activity that Plaintiff alleged. The ALJ found Plaintiff lacked credibility in his assertion that his treatment was a complete failure. (AR at 31.) Moreover, the ALJ accepted the March 29, 2004 and June 22, 2004 Physical Residual Functional Capacity Assessments made by state agency medical experts, Drs. Lambrechts and Reddy, respectively, to the extent that they found Plaintiff could perform medium level work activity and perform an eight-hour work day. (AR at 31-32.) However, the ALJ gave little weight to their opinions on Plaintiff's postural and environmental limitations because they were based on Plaintiff's subjective complaints. The ALJ's weight determination was based on her view that he was not credible and the limitations were inconsistent with objective evidence. (AR at 32.)

- Plaintiff was capable to perform past relevant work as an electrician, since this work did not require the performance of work-related activities precluded by Plaintiff's residual functional capacity ("RFC"). (AR at 34, Finding No. 6.)

- Plaintiff has not been under a disability, as defined in the Social Security Act, from March 10, 2003 through the date of the decision.

The ALJ also detailed her review of the following: (1) the treatment notes from Plaintiff's treating physician, Dr. Matthew Arvon, (2) opinions of examining sources, Drs. Maducdoc and Dr. Garner regarding Plaintiff's RFC, (3) the testimony of medical expert, Dr. Judith Brendemuehl, which included an opinion that there was nothing in the record to contraindicate that Plaintiff could perform medium work activity, (4) testimony of medical expert, Dr. William Phelps, who opined

on July 12, 2005, that although Plaintiff had been placed on psychiatric medications, Plaintiff did not have a medically determinable psychological impairment and had never been referred to any mental health professional, (5) opinion of examining source, psychologist Dr. Samantha Mann, regarding Plaintiff's Mental RFC and the diagnosis that he suffered from depressive and anxiety disorders, not otherwise specified and (6) testimony of Dr. John Linton on March 7, 2006, regarding the record relating to Plaintiff's mental health evaluation. (AR 33-34.)  The ALJ gave varying amounts of weight to the opinions of the medical sources.  To the extent that the proffered opinions relied on Plaintiff's subjective complaints, the ALJ gave those portions of the opinions "little weight" since she had determined that Plaintiff was not credible.  Inasmuch as the opinions reflected Plaintiff's capacity to perform medium work, she credited those portions of the opinions as consistent with the objective medical evidence.  (*Id*.)

On August 23, 2006, Plaintiff sought review of ALJ Bawolek's decision. (AR at 16-18.) That decision became the final decision of the Commissioner on July 23, 2008, when the Appeals Council denied Plaintiff's request for review. (AR at 4-7.)  On September 29, 2008, Plaintiff sought judicial review of Defendant's final decision, pursuant to 42 U.S.C. § 405(g). (Document No. 1.)[4]

---

[4] On August 18, 2006, after receiving ALJ Bawolek's June 29, 2006 decision, Plaintiff applied a second time for disability insurance benefits for a period of disability beginning on June 30, 2006.  The second application was initially denied. However, on June 25, 2007, ALJ Harry C. Taylor, II, determined, without a hearing, that Plaintiff was disabled as of June 30, 2006, and entitled to benefits.  On February 2, 2009, Plaintiff requested that this Court remand his case to the Commissioner for consideration of the "subsequent favorable decision by ALJ Taylor." (Document No. 8.)  On February 26, 2010, the assigned Magistrate Judge recommended granting Plaintiff's motion for remand.  (Document No. 15.)  However, on March 31, 2010, this Court denied Plaintiff's motion to remand. (Memorandum Opinion and Order (Document No. 18.))  This Court found that "Plaintiff had not demonstrated why this case should be remanded for the Commissioner to do that which he has already done–considered the subsequent favorable disability determination by ALJ Taylor." (*Id*. at 7.)

## *II. THE PARTIES' WRITTEN SUBMISSIONS*

In his brief, Plaintiff asserts that the ALJ's decision is not based on substantial evidence because she erred (1) in relying on the testimony of non-examining psychologists, Drs. Phelps and Linton, to determine that he did not have a severe mental impairment and was not disabled based on his mental condition (2) by improperly assessing his credibility, and (3) in failing to find that he is disabled due to the combined effect of all of his impairments, including his mental health and obesity. (Pl.'s Mot. at 17.)

Relevant to the discussion here, Plaintiff argues that Dr. Phelps testified at his first hearing regarding his mental health. Dr. Phelps, however, found the record incomplete because Plaintiff's mental condition had "never been fully diagnosed." (*Id*. at 19.) Therefore, Plaintiff characterizes Dr. Phelps's opinion as tentative. Plaintiff also argues that it was reversible error for the ALJ to rely upon that opinion because Dr. Phelps was never asked to render an opinion at the supplemental hearing after the psychological examination was completed. As to Dr. Linton, Plaintiff contends that Dr. Linton "recognized that he was depressed as a result of his back pain." (*Id.*) Plaintiff also contends that Dr. Linton found Dr. Mann's mental evaluation "confusing" and that he "clearly had problems" with it. However, Dr. Linton deferred to her conclusions because she examined the Plaintiff. (*Id*.) As a result, Plaintiff contends the ALJ's characterization of Dr. Linton's opinion is "misleading." (*Id*. at 20). While he concedes that "[t]he evidence may have been sketchy, or even inadequate . . . [he asserts that] it nevertheless was sufficient to establish a prima facie case of disability which was not rebutted by the Commissioner." (*Id*.) Plaintiff argues that the ALJ should have considered the findings regarding his mental health along with the balance of his impairments and determined that he was disabled.

In the Defendant's motion for judgment on the pleadings, he asserts that the ALJ's decision that Plaintiff could perform medium work is supported by substantial evidence. He cited the ALJ's consideration of the 2004 opinions of two state agency physicians, Dr. Lambrechts and Dr. Reddy, who determined that Plaintiff was capable of medium exertional work, the 2005 opinion of Dr. Arvon, Plaintiff's treating physician, regarding Plaintiff's ability to carry up to 50 to 100 pounds occasionally and 20 to 50 pounds frequently, the examining source opinions of Drs. Garner and Maducdoc regarding the weight Plaintiff could carry, the testimony of Dr. Brendemuehl, the medical advisor who evaluated the entire medical record and found Plaintiff capable of medium work, and the opinions of psychologists that Plaintiff was capable of working. (Def.'s Mot. at 5.)

Further, in opposition to Plaintiff's motion, Defendant refutes the assertion that the record supports a finding of a mental impairment. Defendant argues that it was Plaintiff's burden to demonstrate that he had a "severe" mental impairment, but he did not allege mental health issues as a basis for his disability claim. (Defendant's Brief in Opposition to Plaintiff's Motion for Judgment on the Pleadings ("Def.'s Oppn.") (Document No. 24) at 1.) Defendant contends that Dr. Mann's mental health evaluation MMPI[5] results were inconclusive in that those results indicated that Plaintiff may have serious psychological problems or that he distorted and exaggerated problems to create the impression of such problems. (*Id.*) Defendant argues that Dr. Phelps rendered an opinion that was not unreliable and Plaintiff's counsel did not dispute the testimony during the hearing. Defendant contends that he should not be heard about that testimony before this Court. (*Id.* at 2.)[6] Further, Defendant acknowledges that Dr. Linton found Dr. Mann's mental evaluation "a

---

[5] MMPI stands for Minnesota Multiphasic Personalty Inventory (AR at 326.)

[6] Defendant refers to Dr. Phillips in his opposition, however, the record does not contain any other

7

little confusing," but found that Plaintiff did not have a "poor" ability to relate to others, as Dr. Mann assessed, given his continued good relationship with his former employer. (*Id*.) Defendant argues that the ALJ's failure to find the presence of a severe mental impairment is harmless because Plaintiff would have still been unable to prove an inability to perform his past work. (*Id*. at 3.) Likewise, Defendant maintained that it is the ALJ's responsibility to assess credibility, not that of this Court. (*Id*. at 4.) Defendant contended that the ALJ properly made that determination and that her decision was supported by substantial evidence. (*Id*. at 5.) Finally, Defendant asserts that the ALJ properly considered the combined effects of Plaintiff's impairments. Defendant observes that Plaintiff did not explain how his physical impairments and his non-severe emotional symptoms combined to render him disabled. (*Id*.)

Finally, in his opposition, Plaintiff asserts that the "bottom line" is that he had a psychological evaluation, "which in effect concluded that he was totally disabled from a mental standpoint[]" and this determination was uncontradicted in the record because Dr. Linton deferred to that evaluation. (Plaintiff's Response to Defendant's Brief in Opposition to Plaintiff's Motion for Judgment on the Pleadings ("Pl.'s Oppn.") (Document No. 25) at 1.) Plaintiff argues that the MMPI results revealed "a strong somatic component to [his] physical condition" and that he did not allege a mental component to his disability "because he had a need to attribute his impairments to his physical condition." (*Id*. at 1-2.) Plaintiff argues that the ALJ acted as her own medical expert when she relied upon the opinion of Dr. Phelps that he was not disabled, which was given prior to his psychological evaluation, and rejected the opinion of Dr. Mann, which he contends was uncontradicted in the record. Plaintiff also presses the Court to dismiss Defendant's contention that

---

reference to a "Dr. Phillips." The Court assumes that this is a mistake and that Defendant meant "Dr. Phelps."

8

if an ALJ correctly identifies one severe impairment, the failure to credit another is inconsequential. (*Id.* at 2.) With respect to the ALJ's credibility determination, Plaintiff argues that Defendant ignored all of the factors that an ALJ must consider in making such a determination by relying on a review of opinion evidence. Plaintiff finds this as "strong evidence" that the Defendant's position with respect to the ALJ's credibility determination is "defenseless." (*Id.* at 2-3.) Finally, Plaintiff argues that the Defendant did not challenge his assertion that his mental impairment contributed to the severity of his physical symptoms and that, therefore, Defendant concedes that issue.

### *III. PF&R*

Magistrate Judge VanDervort, in his PF&R, described the process for adjudicating disability claims as provided by the Social Security Regulations, set forth a discussion of Plaintiff's medical records, considered his challenges to the Commissioner's decision and Defendant's arguments in support of that decision.[7]

With respect to the Plaintiff's contentions that the ALJ improperly determined that he did not have a severe mental impairment, the Magistrate Judge observed that the ALJ acknowledged the indications of depression and anxiety in Dr. Arvon's treatment notes and Dr. Mann's psychological evaluation. However, the ALJ concluded that Dr. Mann's opinion, that Plaintiff had a severely deficient ability to maintain social functioning, was not supported by the record, including Dr. Mann's evaluation and Plaintiff's testimony. (PF&R at 20.) The ALJ noted that Plaintiff indicated that he visited family and friends, went out on a daily basis and had no problems getting along with

---

[7] The Court notes that Magistrate Judge VanDervort included a detailed discussion of the medical evidence in this case, to which no objection has been made. Therefore, a further recitation of Plaintiff's complete medical record is not necessary here. However, the Court will include a brief discussion of the relevant medical findings in dispute and the ALJ's consideration of the same.

9

others. The ALJ determined that Plaintiff's mental impairment resulted in only mild deficiencies in maintaining activities of daily living, social functioning, concentration, persistence and pace. (*Id.*) The Magistrate Judge observed that the ALJ considered that Plaintiff had not had any episodes of decompensation of extended durations and that upon an examination of Listings 12.04 and 12.06 there was no documentation of record to support a listing impairment. (*Id.*) Additionally, Magistrate Judge VanDervort agreed that Dr. Phelps' opinion of Plaintiff's mental health was tentative. However, he found that the ALJ's reliance on it was proper because she had adopted the second medical expert, Dr. Linton's opinion that Dr. Mann's psychological evaluation was inconsistent in that it did not make sense. Therefore, the ALJ found that Dr. Mann's opinion was entitled to "little weight." Moreover, the ALJ determined that Dr. Maducdoc's opinion was entitled to little weight because he had only examined Plaintiff physically and did not perform a mental status evaluation. The ALJ also found that, although Plaintiff's treating physician noted that Plaintiff's depression could have contributed to his increased back pain, Dr. Arvon neither made any mention of Plaintiff's mental impairments, nor, assessed any limitations resulting from a mental impairment. Further, the Magistrate Judge found that the ALJ determined that the only diagnoses of mental impairment came from Dr. Mann and those were of depressive and anxiety disorders which were not otherwise specified. Consequently, the ALJ was "left with the evidence . . . presented [by] Dr. Phelps." Therefore, the Magistrate found that the ALJ's determination that Plaintiff's mental impairments were not severe was supported by the substantial evidence. (*Id.* at 21.)

The Magistrate Judge further found that the ALJ's credibility assessment conformed to the factors set forth in the applicable regulations in that she employed the two-step process used to

determine whether a claimant is disabled by pain or other symptoms. (*Id*. at 24.) Upon a review of the Plaintiff's complaints of symptoms and his testimony about his daily activities, the ALJ found several inconsistences in the record with respect to written documentation of Plaintiff's level of activity and the testimony presented at the hearing. (*Id*. at 25.) The ALJ noted that the psychological testing conducted by Dr. Mann on October 4, 2005, suggested that he greatly exaggerated problems to create the impression of a severe psychological disorder. (*Id*. at 26.) The Magistrate Judge found that the ALJ discussed the nature of Plaintiff's pain, including its location, duration and frequency, noted his treatment and the absence of side effects from treatment, and summarized the various types of treatment he has tried to alleviate his pain. (*Id*.) The Magistrate Judge found that the ALJ reviewed all of the factors set forth in the applicable regulations, concluded that Plaintiff's subjective allegations were not supported by the conservative treatment he received and the absence of intensification of treatment, determined that Plaintiff "greatly minimized his activity level[,]" and reviewed the opinion evidence of record. (*Id*.) Upon this examination, the Magistrate Judge found that the ALJ's conclusion that Plaintiff was not entirely credible was supported by the substantial evidence of record. (*Id*.)

Finally, the Magistrate Judge found that the ALJ did not err in her consideration of Plaintiff's impairments or combinations of impairment. Specifically, the Magistrate Judge found the record revealed that although Dr. Arvon discussed with Plaintiff that his chronic back pain could lead to depression, which in turn could lead to worsening back pain, Dr. Arvon did not identify Plaintiff's depression or obesity as a reason to support his assessed functional limitations. (*Id*. at 27.) Furthermore, the Magistrate Judge determined that Plaintiff failed to allege obesity as a disabling impairment, demonstrate how the combination of his physical and mental impairments rendered him

11

disabled or established any particular limitation resulting from those combined effects. (*Id.*)

## IV. PLAINTIFF'S OBJECTIONS

Plaintiff timely filed his objection to the PF&R, wherein he contested the Magistrate Judge's finding that the ALJ's determination that he did not have a severe mental impairment was supported by substantial evidence. The Court finds that Plaintiff largely restated the arguments made in his motion. However, he directed this Court to the Magistrate Judge's recognition that Dr. Phelps's mental health testimony was "tentative." (Pl.'s Obj. at 2.) He contends that "surely the ambiguous, tentative testimony by Dr. Phelps cannot constitute substantial evidence rebutting the findings of . . . [an] examining psychologist." (*Id.*) He asserts that an opinion of a non-examining consultant cannot constitute substantial evidence when all of the medical evidence is to the contrary. (*Id.*) Moreover, he asserts that the "ALJ was under an obligation to determine whether the new evidence [of his psychological evaluation, which was not available to Dr. Phelps] would have changed Dr. Phelps opinion. (*Id.* at 3.)

## V. STANDARD OF REVIEW

The Federal Magistrates Act requires the district court to make a *de novo* review upon the record of any portion of the proposed findings and recommendations to which written objections have been made. 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b). Conversely, the Court is not required to review, under a *de novo* or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendation to which no objections are addressed. *See Thomas v. Arn*, 474 U.S. 140, 149–50 (1985); *see also Camby v. Davis*, 718 F.2d 198, 199 (4th Cir. 1983) (holding that districts courts may adopt proposed findings and

recommendations without explanation in the absence of objections). A district court judge may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

### VI. DISCUSSION

First, the Court finds that Plaintiff does not object to the Magistrate Judge's findings with respect to the ALJ's credibility determination or consideration of the combined effect of all his impairments. Therefore, the Court adopts the Magistrate Judge's decisions as stated in the PF&R. Consequently, the only issue before the Court is whether the ALJ's determination that Plaintiff did not have a severe mental impairment is supported by substantial evidence.

Section 405(g) of the Social Security Act provides that, "the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). This language limits the Court's role in reviewing the ALJ's decision to determining whether the findings are supported by substantial evidence. (*See Craig v. Chatter*, 76 F.3d 585, 589 (4th Cir. 1996) ("Under the Social Security Act, [a reviewing court] must uphold the factual findings of the [ALJ] if they are supported by substantial evidence and were reached through application of the correct legal standard.")); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971) ("Ultimately, it is the duty of the administrative law judge reviewing a case, and not the responsibility of the courts, to make findings of fact and to resolve conflicts in the evidence.")). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." (*Craig*, 76 F.3d at 589; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964) ("Substantial evidence has been

defined innumerable times as more than a scintilla, but less than preponderance.")) (citation omitted). In making its determination, the Court must look to "the whole record to assure that there is a sound foundation for the Secretary's findings, and that his conclusion is rational." *Vitek v. Finch*, 438 F.2d 1157, 1157-58 (4th Cir. 1971). "In reviewing for substantial evidence, [the reviewing court] do[es] not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Craig*, 76 F. 3d at 589 (citing *Hays*, 907 F.2d at 1456.)

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." (42 U.S.C. § 423(d)(1)(A)). The Social Security Administration utilizes a five-step inquiry to determine eligibility for social security benefits.[8]

Here, the ALJ went through each step to determine that Plaintiff was not disabled because he had residual functional capacity that allowed him to return to his past relevant work. In her consideration of step two, the ALJ found that Plaintiff did not have a severe mental impairment. At this step, Plaintiff maintains the burden of proof. Plaintiff contests the ALJ's reliance on non-examining medical sources as opposed to the psychologist who performed his mental health

---

[8] This inquiry requires the Commissioner to consider, in sequence, whether Plaintiff (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that meets or equals the requirements of a listed impairment; (4) could return to his past relevant work, and (5) if not, whether he could perform other work in the national economy. 20 C.F.R.§ 404.1520. The steps are followed in order, and if a Plaintiff is determined to be not disabled at one step, the evaluation proceeds to the next step. (*See Johnson v. Barnhart*, 434 F.3d 650, 653-54 (4th Cir. 2005)).

evaluation.[9] However, the Commissioner has promulgated regulations providing guidance on how medical opinions are to be weighed in disability determinations. *See* 20 C.F.R. § 404.1527. The Commissioner must evaluate every medical opinion received and consider it together with the rest of relevant evidence in the record. 20 C.F.R. §§ 404.1527(b) and (d). Consideration of non-examining medical sources is not inappropriate. In fact, the Commissioner considers all evidence from non-examining sources to be opinion evidence. 20 C.F.R. §§ 404.1527(f), 416.927(f). The non-examining source opinions are generally made by state agency medical and psychological consultants that are "highly qualified physicians . . . who are also experts in Social Security evaluation." 20 C.F.R. § 404.1527(f)(1)). The findings and other opinions of these physicians are considered, except for the ultimate determination about whether a claimant is disabled. (*Id*).

The Court has reviewed the record in this case and finds that Plaintiff, at no point, affirmatively claimed that he had a mental impairment. He never indicated that he suffered from a mental impairment in his disability application or during his testimony before the ALJ. Plaintiff's mental health is only placed into the record in the following manner:

> 1) Dr. Arvon, treating physician, indicated that Plaintiff had a history of anxiety. Plaintiff also reported to Dr. Arvon that he was depressed. Dr. Arvon noted Plaintiff's concern and discussed with him the possibility that his back pain could cause his depression and the depression could worsen his back pain.

Although, the record reflects that Plaintiff was treated with psychiatric medications, there is no indication in the record that Dr. Arvon referred Plaintiff to a psychiatrist or psychologist.

---

[9] The "treating physician rule" applies to entitle the opinion of a treating physician to great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." *Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983). Here, since it does not appear that the physicians or experts whose evaluations appear in the record saw Plaintiff more than once, the objectives of the treating physician rule are not accomplished by giving great weight to any of their opinions. Moreover, the Court finds that Plaintiff was not treated by a mental health professional at any point during the time period under review and, therefore, there is no "treating physician" in this case with respect to his mental health.

Further, Dr. Arvon did not consider Plaintiff's reports of anxiety and depression in his September 29, 2004 evaluation.

>2) Dr. Maducdoc performed a physical evaluation of Plaintiff on January 20, 2005. Included in his assessment was a mental residual functioning capacity evaluation. He opined that Plaintiff had a fair (limited but satisfactory) ability to relate to co-workers; poor (seriously limited but not precluded) ability to deal with the public, maintain attention/concentration, behave in an emotionally stable manner, relate predictably in social situations and understand, remember and carry out complex, detailed, or simple job instructions. Dr. Maducdoc considered Plaintiff's report that he had a nervous disorder. He noted that Plaintiff had not received mental health treatment. He suggested that he do so.

The ALJ gave little weight to these opinions because Dr. Maducdoc performed only a physical examination, not a mental status evaluation or psychological testing.

>3) Dr. Samantha Mann performed a mental evaluation of Plaintiff on October 4, 2005, at the direction of the ALJ. She opined that Plaintiff has fair (limited but satisfactory) ability to follow work rules, use judgment, deal with work stresses, function independently, maintain attention/concentration, maintain personal appearance, relate predictably in social situations, demonstrate reliability and understand, remember, and carry out complex detailed or simple job instructions. He was found to have poor (seriously limited but not precluded) ability to relate to co-workers, deal with the public, interact with supervisors and behave in an emotionally stable manner.

The ALJ gave this opinion little weight because it was not supported by the evidence in the record, including Dr. Mann's own examination of Plaintiff. The Court finds that the ALJ explained in her decision that the record evidence included Plaintiff's own report that he visits friends and family; has no problems getting along with people, and helps out his former supervisor and friend. The ALJ also observed Plaintiff to interact in a socially appropriate manner throughout both hearings.

>4) Dr. Phelps testified at Plaintiff's initial hearing that Plaintiff had no medically determinable psychological impairment and he had never been referred to any mental health professional. Dr. Phelps also opined that Dr. Maducdoc's mental residual functional capacity assessment was not relevant because he only did a physical examination of Plaintiff.

The ALJ determined that this opinion was entitled to significant weight as it was well

16

supported by the evidence. Plaintiff takes exception to the ALJ's reliance on this opinion deeming it as ambiguous. Moreover, both he and the Magistrate Judge characterized the opinion as "tentative." This Court has reviewed the entirety of Dr. Phelps's opinion and respectfully departs from the Magistrate Judge's finding. Dr. Phelps testified before the ALJ on July 12, 2005, prior to Plaintiff's psychological evaluation. At the time of his testimony, the medical record was just as indicated. Although, Dr. Arvon had prescribed psychotropic medications, he had never made a referral to any mental health professional, the medications were attempted to assist Plaintiff in sleeping and his mental health had never been fully diagnosed. Notably, Plaintiff did not challenge these assertions at the time of his hearing. Indeed, any such challenge would have been inconsistent with the state of his medical record. The Court finds no ambiguity or tentativeness in Dr. Phelps assessment. In his testimony, he merely pointed to the absence of a medical diagnosis or medical records regarding Plaintiff's mental health. The lack of a diagnosis is not surprising where Plaintiff never alleged a mental impairment and his treating physician did not refer him for treatment of the same. Dr. Phelps concluded his testimony with an acknowledgment that Dr. Maducdoc suggested that Plaintiff see a psychiatrist. As stated above, that suggestion was made upon Plaintiff's report of a nervous disorder.

> 5) Dr. Linton testified at Plaintiff's supplemental hearing on March 7, 2006. He found that Plaintiff was not in treatment for psychological symptoms; had never been in treatment; takes no medication for psychological symptoms; had a diagnosis of depressive and anxiety disorders "not otherwise specified" which meant that the diagnosis did not meet any particular criteria; and was not claiming a psychiatric case, to which he agreed. He found the Plaintiff to be depressed, but in a manner common to patients who experience pain and have a change in lifestyle. He testified that he found Dr. Mann's Mental RFC "a little confusing" in that it appeared that it was completed by a supervising psychologist and because she listed Plaintiff as "fair in . . . simple, detailed and complex" with respect to performance adjustments. Dr. Linton found it "very unusual to have someone who's kind of average in all three of these." However, because Dr. Mann was the examining doctor, he stated that he could not disagree with the evaluation. Like Dr. Phelps, he found Dr. Maducdoc's mental

17

> RFC irrelevant because it was completed at the end of a physical assessment. He stated that he didn't "know how much credibility to give a medical evaluator who didn't ask those kinds of questions at all apparently, just filled the form out." Ultimately, Dr. Linton deferred to the opinion of Dr. Mann, but found that her assessment that Plaintiff poorly related to co-workers and interacted with supervisors was discredited by Plaintiff's testimony that he frequently goes back to his last place of employment and has a good relationship with his former supervisor.

The ALJ found Dr. Linton's opinion to be entitled to significant weight because it was supported in the evidence of record. Plaintiff challenges the ALJ's determination by contending that it is "misleading" and that it "does not provide substantial evidence to refute the evidence in the record that [Plaintiff] was totally disabled from a mental standpoint." (Pl.'s Mot. at 20.) The Court is not persuaded that there is a finding in the record that Plaintiff is "totally disabled from a mental standpoint." Moreover, the ALJ aptly reviewed Dr. Mann's mental health assessment and found it inconsistent with the objective evidence of record.

Upon a *de novo* review of Plaintiff's assertion that the ALJ erred in relying on non-examining medical health advisors and in failing to find Plaintiff disabled based on his mental condition, for the foregoing reasons, the Court finds that substantial evidence supports the ALJ's decision. The ALJ found evidence in the record which contradicted the examining psychologist. Additionally, the ALJ found that Plaintiff was not entirely credible. As stated previously, the Magistrate Judge found the ALJ's credibility assessment proper and supported by substantial evidence—a finding to which Plaintiff did not object.

Moreover, the Court finds Plaintiff's assertion that the ALJ committed reversible error–in failing to ask Dr. Phelps's to render an opinion at the supplemental hearing after Plaintiff underwent a psychological evaluation–is lacking. First, the Court notes that Plaintiff did not object before the ALJ at the hearing to the use of Dr. Linton's testimony, over that of Dr. Phelps. Notably, Plaintiff

18

was represented by counsel at this hearing. Second, and largely dispositive of the issue, Plaintiff has not shown how he was harmed by the absence of Dr. Phelps at his supplemental hearing. Indeed, his psychological evaluation, which was not available to Dr. Phelps, was discussed at the supplemental hearing without any challenge from Plaintiff.

Therefore, the Court overrules Plaintiff's objections and adopts the Magistrate Judge's findings, with the exception noted above.

*VII. CONCLUSION*

Accordingly, based on the foregoing, the Court **ORDERS** that the Magistrate Judge's Proposed Findings and Recommendation (Document No. 28) be **ADOPTED**, that Defendant's Brief in Support of Judgment on the Pleadings (Document No. 21) be **GRANTED**, that Plaintiff's Brief in Support of Judgment on the Pleadings (Document No. 23) be **DENIED**, that the final decision of the Commissioner be **AFFIRMED** and that this matter be **DISMISSED** from the Court's Docket.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER: September 26, 2011

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA